Good morning. My name is Diane Gibson. I represent the Provident Bank and I will be making the initial presentation on behalf of the appellants in these consolidated appeals. We would like to reserve five minutes for rebuttal and of the initial 15 minutes, I will be turning over the podium to Mr. Coonley, who represents Brainstorm, for two to three minutes at the end for discussion of Brainstorm's issues of its right to arbitrate. The District Court's opinion in this matter should be overturned for the following reasons. First, there are factual findings that are unsupported by the record and that constitute an attack on the contract as a whole and not the arbitration clause alone. Secondly, the District Court erroneously applied the restatement choice of law analysis and recent changes in the law make this an even more important problem. Further, there has been new law since the briefing on the issues of the unconscionability of the class action waiver and new law clarifying that 17200 claims under the Business and Professions Code, such disgorgement claims can indeed be arbitrated. What I would first like to address is whether there was an agreement to arbitrate. Secondly, the unconscionability issues. And finally, the 17200 claims. Counsel, if you can help clarify for me, when you talked initially about factual findings, was there a hearing in the normal sense of calling witnesses and cross-examining witnesses and so forth? Or was this done on declarations and arguments of counsel? The hearing was done on arguments of counsel and declarations alone. That would be the declarations of Ms. Tamayo, Ms. Algarotti, and then the declarations of the Brainstorm personnel, including Ms. Rodriguez. Then just how can the District Court appropriately make findings or determine whether there was or was not an agreement without having a hearing? That's not specifically argued quite in that form by the parties, but it strikes me that where one party says I never got the contract and the other party says you're bound by the contract, it would be useful to have a hearing. It might well have been useful, Your Honor. There was no such hearing in this case. And it certainly are Did you request a hearing? Pardon me? Did you request a hearing on anything other than affidavits? No, Your Honor, we did not. And on that question, though, on whether there was, whether they received the contract, the district judge didn't decide that issue, right? No, he did not. And that's our point, is that he actually, he made many conclusions in the order, but they're not actually findings of fact. He refers to evidence in either direction and then finds there was not an agreement to arbitrate, but does not make any findings of fact in aid of that ultimate legal conclusion. What should we be assuming for purposes of the present appeal with respect to the question, for example, of delivery of the arbitration agreement? The question goes to the burden of proof, Your Honor, and it's the burden of proof on the party attacking the arbitrability clause to prove that there was no agreement or that it was not enforceable. And so absent proof or findings of fact that are supportable by evidence in the record, the arbitration clause, which is labeled arbitration in bold print, should be upheld. Well, I thought that the district court didn't decide whether it had been delivered or not, and because he concluded that even if it had been, the clauses were unconscionable and couldn't be enforced. So if that's true, what difference do any of those factual disputes make? Well, it certainly – if the contract is unconscionable, you're right, Your Honor, it doesn't make a difference whether there was an agreement. But if, as we contend, and as I'll get to in a moment, the contract was not unconscionable, then it becomes very important to determine whether there was an agreement. And the district court's opinion doesn't actually make that decision based on any findings of fact that are in the plaintiff's complaint, which of course is not evidence, about the overall approach to the signing of the contract, but does not make a factual finding about whether the actual agreement, as opposed to the application, was left with the plaintiffs. But if we accept the notion, which is essentially what the district court did without making the finding, it says even if the arbitration agreement had been unconstitutional, it would have been unconstitutional because of unconscionability. So I assume that what you're saying is let's look at it from that perspective? Well, what we're saying is there was an agreement. The district court found that there was not, and we think that that finding was not supported by substantial evidence. However, we also believe that the agreement, if there was one, was not unconscionable, that the agreement was enforceable. And so therefore, the court's  finding was that it was not unconscionable. But the statement that there was no agreement was not a question of delivery. It was rather a problem with the content of the document. So we still, I assume, for purposes of getting ourselves to first base at least, operate on the premise that the district court seemingly did, and that is that the reason it didn't have to decide delivery was that even if there were delivery, you'd be in trouble. Right, Your Honor. Okay. And just briefly, what we would like to say is we think there was an agreement based on the language in the application and the language in the agreement as we've stated in the briefs. We'll rest on those arguments and move on to the issue of unconscionability because you're right, the unconscionability issue has to be addressed one way or another. There were two views there. I'm not sure I really understand. Isn't the only reason he said there wasn't an agreement was because it was unconscionable? In what way do you think he found there was no agreement? He didn't say it wasn't signed. Doesn't that all relate just to the question of whether it was an invalid agreement? It's unclear, Your Honor, because the court in the order makes it for factual findings about the delivery and the other issues. He does not specifically state one way or another. We feel in order to ensure that the court considers all of the issues, that it does need to be addressed whether the agreement itself. But why, if it's an unconscionable agreement, why do we have to address anything else? I'm sorry, Your Honor. Why, if it's unconscionable, do we have to address anything else? Why can't we start with that issue? If you win on it, then I assume you're going to win. If you lose on it, you're going to lose. What is it that's a problem about approaching it that way? I have no problem approaching it that way, Your Honor. That's actually where I was just planning to go next. All right. When we get to the issue of unconscionability, there are two issues, the procedural unconscionability side and the substantive unconscionability. Most of what the court talked about in terms of delivery and the like had to do with the procedural unconscionability side of the analysis. And we rely on what we said on our briefs on procedural unconscionability, except to address one of the many new cases that has come out since the briefing was complete, which is just to emphasize that in the Ting case, the court emphasized, again, that it's a sliding scale. The less procedural unconscionability, the more substantive it needs to be shown, and vice versa. But a contract of adhesion warrants the finding of procedural unconscionability, right? Even so, there is a sliding scale. And I would say a mere contract that is not negotiable between the parties and that is on a preprinted form is substantially less procedurally unconscionable than the contract in Ting v. AT&T, in which AT&T, essentially, the court found, tried to mislead its customers by giving the agreement in a way where they wouldn't notice that it was an agreement. And my point is that there's no such procedurally unconscionable facts in this case where arbitration was in bold letters and it was in the initial contract, not in an amendment delivered later by e-mail, like in some of the cases. Okay. So we have procedural unconscionability, but not necessarily of the grossest sort. Certainly, Your Honor, we would say at most we have the only the adhesion contract issue. All right. Moving on to substantive unconscionability, which is the area where there has been some change in the law, there are two grounds on which the court determined that the contract was substantively unconscionable. One was the issue of prohibitive fees and the other was the waiver of class action. Briefly addressing the prohibitive fees, there are three reasons why the court erred. First, the court erred in admitting the evidence regarding the cost of other arbitrations that may or may not have been comparable to the arbitration in this case. Second, the court erred because it assumed that class action and multiple fees would be prohibitively expensive. As drafted, the contract requires only single arbitrations, and thus under the AAA rules, which were chosen by the plaintiffs as required under the contract, they would only be required to pay a $125 filing fee, which is comparable to the filing fee of the court. Well, don't they have to pay the costs of the arbitrator, half the costs of the arbitrator? No, Your Honor, not under the consumer rules. Under the commercial rules, they would, but under the consumer rules, they would not. But you're saying that the fee issue really gets swallowed up in the class action issue. We're saying that the contract as written was not unconscionable due to the fees, but the plaintiffs have argued that the contract should be, in a sense, rewritten in a way that would raise the unconscionability issue on the fee question. The third point on the fees, and then I'd like to get to the class action issue, the third point, though, is there's no likelihood that they would ever incur those fees because the defendant stipulated to pay all the fees regardless of what form the arbitration took. Well, when you say the defendant stipulated, I assume you're referring to the fact that in a reply memo to, on the motion to dismiss, in the final memo, a lawyer for the defendants, for one of the defendants, says at the bottom of the memo that the defendants are willing to stipulate, I assume purporting to speak for both defendants, although not representing one of the defendants, and puts it in the bottom of a reply memo. There is no offer of stipulation in a separate document nor is any document identified as an offer to stipulate. There is in the final document to which nobody can reply a statement in the bottom paragraph by one lawyer as to what both defendants would do. Your Honor, I believe it's also in the separate reply that was filed by Brainstorm. It was in Providence' reply. And certainly my experience with district court judges is that they'd certainly hold Providence to that offer when their lawyer said it in a brief in which they represented that party. I believe it was also in Brainstorm's separate reply. But is the standard for testing a contract the terms of the contract or is it the contract as it may get modified later on in the context of litigation? That has to do with the severability issue, Your Honor. Certainly it's initially determined according to what the contract looks like when it's written, which is my point about how you shouldn't consider larger fees because the contract as written doesn't allow class actions. However, subsequent conduct in the course of litigation in which parties waive arguments or rights is always something that a court can consider. And so the contract can or must. Pardon? Can or must. I think the court must consider the conduct of the parties as evidence. You can have an unconscionable contract and as you lose, as you go along, just drop each provision and say, well, it's no longer unconscionable because we're going to tell the court that we're not going to enforce that part of it? Well, that's the Otto v. Stigler case that came out since the brief is important on that point. It says you look at the contract. But when you say the case came out, from what court? That is a California state court case, Your Honor. What state court? Appellate court. I'm sorry. I don't recall the division. In that course, the court confirmed that under California law, the court looks at a proposed change to the contract of this nature to determine whether the contract was illegal as written and then applies the normal severance law to determine whether it should or should not sever the part that is the offending part. And here, if the court determined that something about the fee structure in the contract needed to be severed, it would be easily severable. California law, Armendaris and other cases have said that an issue about fees is one of the easiest parts of an arbitration contract to sever, correcting whatever illegality may exist. In this case, we certainly believe it wasn't illegal, but if the court found it was, that can be corrected, and then leaving the remainder of the contract intact. Getting to the issue of the class action waiver, this is a case where the Supreme Court has recently issued an opinion, the Basel v. Greentree case, which implies that it is not. Which Supreme Court? The United States. The U.S. Supreme Court, Your Honor. I apologize. The United States Supreme Court in July issued its opinion in Greentree v. Basel, and it did not answer the question that had been put to the court, which was if a contract is silent as to arbitration, is arbitration allowed under the FAA? Substantial body of circuit court authority says that if the contract is silent, class action arbitration is not allowed. The court did not decide that. It said that the issue in that case was a matter of interpretation of contract and sent it back to the State court for decision. However, the court implies by that decision that under the FAA, at least, it is not unconscionable to exclude class actions from an arbitration clause. The other issue that's important as a result of Basel is that it highlights the way in which this Court need not follow the Ting decision in which Ting decided that class action waiver rendered a contract unconscionable. Ting relies on California law, but California cases that hold that the class action waiver is unconscionable conflict with all of these consistent Federal opinions that I just mentioned that say that silence about a class action means that there can be no class action. You're saying that we can disregard Ting? I'm saying that Basel is subsequent United States Supreme Court authority that gives the court grounds to disregard Ting on the class action issue, particularly because, as I'll get to in a moment, Ting is also factually distinguishable. But what – because as I said, Basel implies that it is not unconscionable under the FAA to exclude class action. Just because it implies it that we can disregard a Ninth Circuit decision? What – yes, because if there's a case that's on point that indicates the leanings of the court, I think the court can disregard it. The leanings of the court is enough for us to – In an area where it's – A, it indicates. It doesn't state. It indicates leanings. It's not holding – That is enough to – This is the Delphic approach to precedent? No, Your Honor. Let me – let me explain. It's always a question of Federal preemption compared to California contract law. The Federal law pretty much consistently throughout the circuits is if a contract is silent for arbitration, then there is no class action. All of the Federal courts say that, and that is the issue that was put to the Basel court, which the Supreme Court has not yet ruled on. So the Federal court is still the same, and it hasn't changed, and the Supreme Court has not yet ruled on it. But if you look at California law, then you go back and look at Ting, and what Ting does is it says under California law, if there's a specific waiver of class action, then the contract as a whole is unenforceable. That's inconsistent with the Federal preemption – with the Federal law, which preempts State law, which says if you took the contract in this case and you crossed out the part about class action so that it was then silent, under Federal law, there would be no class action right. And that's not unconscionable. And it's important to remember that the claims against Provident Bank in this case are all based on violation of the Truth in Lending Act. And as we've indicated, all of the Truth in Lending Act circuit court cases that have been heard on this issue are consistent with that theory. Isn't there more than Ting? Weren't there three cases? There's Ting, there's Ingle, there's Mantor, but they all follow the same length.  So we should disregard the whole line of Ninth Circuit cases. Well, Your Honor, you should disregard them because they don't deal with the Truth in Lending Act, and so they don't address those preemption issues. You should also disregard them because they're factually distinguishable. Ting, Ingle, Mantor all involved half a dozen different forms of unconscionability so that the courts found – But don't they all say that the class action provision is unconscionable? They all say that the class action provision is unconscionable, and in that sense they all contradict the Federal authority. Okay. So you want us to disregard at least three, maybe four, Ninth Circuit cases that hold the same thing? That all hold the same thing but are all distinguishable on this basis. But are all wrong, right? Pardon me? They're all wrong or they're all distinguishable? They're all – well, in my view, they're wrong, but that probably isn't persuasive to you. But they're also all distinguishable. And they also are not – Are they all distinguishable on the issue of whether the class action provision is unconscionable? Yes, they are all distinguishable, both because they don't address – because they couldn't, because Basel came later, the Basel case, and because they – and because they do not involve the Truth in Lending Act cases that we've talked about. And they're all factually distinguishable as well. That's not a wrong issue. That's just a you don't have to follow them issue. Because they all involve multiple, multiple claims. No, that's – the multiple, multiple claims has nothing to do with whether a class action provision is unconscionable. No, Your Honor. That has to go with whether the contract as a whole is informable. I was mixing those two issues together. All right. So I just want to make sure we agreed that there was a clear line of a number of Ninth Circuit cases that say the class action provision is unconscionable. All based on California law and all not addressing the preemption issues that I've discussed that have come under Basel and Truth in Lending Act. Your Honor, I definitely want to get to the choice of law issue, and I'm afraid I'm running out of time. Just briefly stated that – Well, we'll give you a couple of extra minutes. Thank you, Your Honor. The district court erroneously ruled on the choice of law provision in this contract. And this is very important to why this court can disregard Ting and the other cases that follow it. Because Ting relies on California state court law, and this contract includes a choice of law provision saying Ohio law applies. The district court did not properly follow the three-point analysis under the restatement. It addressed only the first question. This is one of the areas where I don't really see how we can assume that the agreement was signed or was received, because unless the agreement was received, there's no basis for the Ohio choice of law provision. So to hold that Ohio law governs, one would have to hold that the agreement, in fact, was entered into. Well, this all goes back to the question that this is a challenge to the arbitration clause. And the court does not have to assume that it is the duty of the party challenging the arbitration clause to challenge that the contract with the arbitration clause was formed. So if it's a wobbler. So for purposes of your argument, then, we must assume, and you think correctly so, that the agreement was, in fact, received in the form that we see it. Yes, Your Honor. Well, in assuming that, under the choice of law, if California has states that a provision is contrary to the public policy of the state, we apply California law, don't we? Well, it's only if it's a fundamental public policy, Your Honor, and that has to be decided on a case-by-case basis. Just because California has law doesn't mean that it would prompt the other law in a choice of law analysis. But there are cases that say it's contrary to California public policy, Your Honor. There are cases that say that under California law, the California law favors the right to class action. There is no case that analyzes this in the choice of law analysis that's required that compares it to the rights to the parties to choose the choice of law that they want in their contract and reaches the conclusion that it is a fundamental policy, especially when taken in conjunction with the State of California's fundamental policy to enforce arbitration clauses, that it is sufficiently fundamental that it would trump the State court law or the choice of Ohio law in the contract. The district court didn't even attempt that discussion before. It needs to be done at some point. And it's also important to note that even that California law is very much up in the air at the moment because the Discover Bank case is up in front of the California Supreme Court and could be affirmed or overturned. And so it's very difficult to say at this point what the California law is. Do you have any idea what the schedule is on that case? No, Your Honor. I wish I did, but I don't. The very last point I'd like to mention is that the California Supreme Court case of Cruz v. Pacific Healthcare Systems has made it clear that claims for disgorgement under 17-200 are not arbitrable, are arbitrable, that arbitration is not preempted by that statute. And we rest on Arriaga and Lozano, the parts of which were not overruled or rejected by Ting or his progeny, on the ground that the injunction claims also should not be arbitrable. Thank you. Thank you. Good morning, Your Honors. I'm Tom Coonley, counsel of the Brainstorm. Just briefly, the appellees argue that Brainstorm can't benefit from the arbitration provision in the credit agreement. Brainstorm, we argue, is a third-party beneficiary. And the way that you can discern whether Brainstorm is a third-party beneficiary is to look for indicia of the party's intentions. In this case, we have the credit application, which ---- Why is Brainstorm bound by that third-party beneficiary contract? Well, Brainstorm is bound because it was the party's intent to include Brainstorm within the purview of the arbitration. If two parties have an intent to bind a third, is the third bound? The third would be bound. You mean if Judge Shader and Judge Graber enter into a contract with the intent to bind me, I'm going to be bound? If you are standing by one or the other and taking the kind of control and participation in the decision-making process between the two, then you could be. In this instance, it was the Brainstorm credit application with Brainstorm's name on it that the plaintiff signed. In this instance, it was Brainstorm who supervised the transaction. In this case, it was Brainstorm whose logo and name appear, and this would be a striking green color if it were in color. Well, if it controlled the contractual papers, why didn't it say Brainstorm also? You know, you were the people who drafted the papers, right? In participation with Provident. Yeah. And so why, if you wanted to have Brainstorm included in the arbitration provision, why didn't you say that? Well, we didn't. And the point is that we participated with Provident in the program, and so it was us who appears in the agreement that created the agreement. More importantly, in paragraph 85 of the plaintiff's complaint, on the basis of this agreement, they argue that we are a creditor. In other words, that we are a party to this agreement. They argue that, and so at the very least, the plaintiff should be stopped from arguing that we cannot benefit from the arbitration clause. Okay. I have nothing further to add. Thank you. May it please the Court. My name is Michael Quirk, and I'm representing the plaintiff's appellees. The question presented is whether the plaintiffs must give up their right of access to court in favor of an inadequate and expensive arbitration system that was never clearly disclosed to them. We submit that the answer is no for at least two separate and independent reasons. First, Provident's arbitration clause does not require the plaintiffs to forego access to court because it does not impose binding arbitration like the defendants are seeking. Second, whether or not it requires the plaintiffs to give up their right to court It imposes mandatory arbitration. Mandatory but not binding. It does not take away a party's right to go to court. It requires that it be done under the rules of either AAA or another entity. What do those rules say, if anything, about the binding nature of an arbitration that is undertaken? Well, I'm not sure what those rules do say about whether it's binding or not, but since those rules only come into play as a result of the contract itself, any time there's a conflict between the contract and the rules of the contract If they're incorporated, I guess my question is, if the contract says it's mandatory, you must arbitrate, and you must do so under the rules of, let's use for now AAA, and those rules themselves say that once you do it, it's binding, I don't see any conflict. They seem to supplement one another. I guess that's my question. That's the reason for my question as to whether they say anything about being binding. Well, we see the conflict arising not with the arbitration clause's mandatory language, which is there, but from the arbitration clause's language saying that arbitration shall occur before the implementation of any legal proceeding. Now, mandatory means you have to do it. It doesn't mean it's the only thing that you can do. The difference between binding and non-binding arbitration is after non-binding arbitration, you have the same right to go to court that you had all along. Unless the rules of AAA that they're supposed to follow say something else. If the AAA rules said something else, the parties could override those rules with the language of the agreement that they have here saying that arbitration takes place before the implementation of legal proceedings. And if there were a conflict between that part of the contract and the arbitration rules, the contract would prevail, and that's why we've argued that this contract does not take away the plaintiff's right to go to court. It does not create a binding arbitration requirement. But, Mr. Quirk, the way that arbitration always works is that the arbitrators, although they have the power to make decisions, do not have powers of enforcement. Typically what then happens is you come into court and you seek to enforce the arbitration award. So isn't it a plausible reading of saying you have to arbitrate, you have mandatory arbitration before you can go to court, another way of saying you have your arbitration, and then once the arbitration award is entered, you then go to court for enforcement purposes, as contrasted with permitting somebody to go to court in the first instance. Isn't that a plausible reading of that? Well, that's the defendant's reading. And, first, that's not what the district court found in reading the contract. The district court found that it wasn't clear that this requires binding arbitration. But, second, if, I mean, it is the normal procedure set out in both the Federal and the California arbitration statutes that parties can go to court to either enforce or vacate an arbitration award. But, I mean, the fact is that those things are already set out in the statute. And that interpretation of this language in the contract really gives it no effect, because whether the contract allows the plaintiffs to do that or not, they could do it anyway under the Federal and State arbitration statute. Isn't it a better contract that spells out what the rights and obligations of people are than one that is silent and then depends on the notion that people are going to have enough smarts, especially consumers, to go to the statute books? Well, I mean, if the purpose of this provision is to inform unsophisticated consumers of their right to go to court to enforce or vacate an arbitration award, it seems it doesn't do that clearly. It simply says before the implementation of legal proceeding, any legal proceeding. Well, it says upon receiving a request for arbitration, before the implementation of any legal proceeding. That sounds to me like if you receive it after a legal proceeding has started, then this clause doesn't apply. At least that's one interpretation of it. I don't know quite what it means to say if you receive a request for arbitration before there's an implementation of a legal proceeding, or no more than 60 days having played. It seems to have to do with the timing of the request, and it seems to mean that you don't get arbitration if the other party has gone to court first. Now, that may not be the right reading of it, but that's certainly to me the most reasonable reading of it. Well, I agree with you, Judge Reinhart, and so did the district court in saying it's not clear what this contract means. This does not look like most arbitration clauses in terms of making parties' duties and restrictions on their rights obvious. And so what the district court did was basically throw its hand up in the air and say it's not clear that the parties ever agreed to binding arbitration. Counsel, something that has bothered me in the analysis of whether this is ambiguous and how a consumer would read it is that this contract was signed in Spanish and was written entirely in Spanish. There was not to be an English equivalent counterpart. There's simply a translation, and it's certified to be accurate. And so we must assume that it is accurate, but that doesn't really tell us much about how a Spanish speaker would perceive or understand the Spanish version of it. This is our hint as to what it means. But is there anything in the record that suggests that to a Spanish speaker, the Spanish version is confusing in particular ways? Are we just kind of left to assume that the English is sort of like the Spanish and the way we read it would be sort of like the Spanish reader would read it? Well, what we have in the record, Judge Graber, is the translation was put into the record by one of the defendants and witnesses, and it's not been disputed. Nobody has ever disputed that this is the English equivalent of what the Spanish-speaking I understand that, but it sometimes happens that a word that is an accurate translation, for example, is accurate but has more than one connotation in one of the two languages and yet is more precise in the other. It doesn't make the translation inaccurate, but it does mean that a native speaker or reader might see it differently. And I guess that's my concern for both parties. I mean, I don't even read Spanish, so I'm not trying to do it myself. I'm just trying to figure out how we can determine that. In the absence of any evidence in the record that that occurred, I don't think there's a basis for determining that that occurred and no reason to do it. The parties have not disputed that this is the English equivalent of the language that the plaintiffs saw, and there's no fight over that. The fight is over what were the plaintiffs to make of this. And in that regard, our position is that under California law, the waiver of the right to jury trial, this is the Beatty v. Bank of America case cited in our brief. And why does California law apply and not Ohio law when the contract applies Ohio law? Well, we cited an Ohio case for the same proposition, the Jones case cited on the same page of our brief, that say that waivers of the right to jury trial must be clear, unambiguous, and unequivocal. And we think that this language is not. There's a plausible interpretation that it requires arbitration in advance of the same right to court proceedings in a jury trial that the plaintiffs would have in the absence of the agreement. And there's no reason to adopt any other interpretation. Is Ohio law the same as California law on all the points in the case, so that it really makes no difference at all that it's a false choice of law? Or is there any issue on which that choice actually would make a difference to the outcome? Well, Ohio law is close on a lot of points. But it's not ñ there are some key points where it's not clear if Ohio law is the same as California law. And those are the points about the excessive cost imposition and the effect of the class action ban. But on those points, California law is clear that there are public policy concerns involved, so that the California law applicable there couldn't be waived either through an arbitration clause or through a choice of law clause. I was going to get to that. The one final point I wanted to say on contract interpretation is, almost everybody who's looked at this has said that it's hard to figure out what to make of this, and there are numerous interpretations that are plausible. It's a bedrock matter of the common law of contracts. California has codified this principle in Section 1654 of the Civil Code. There's Ohio case law recognizing that when you have an ambiguity in the contract, something susceptible to multiple interpretations, the ambiguity should be resolved in favor of the non-drafting party. It should be resolved against the party that drafted the adhesive contract and brought the ambiguity into existence. And that's a rule that clearly applies here. And that should be enough to say that the contract doesn't require binding arbitration, and since the only thing that the defendants have ever asked for is binding arbitration, there's no basis in this contract to take the plaintiffs out of court. Now, and that's a sufficient basis to decide this case, and we think that the district court was right that there's no agreement to binding arbitration. But even if there is, the district court was also right that it's unconscionable. And that's what I'd like to turn to now, to the unconscionability of the arbitration clause. Let me ask you one question about that. Your opponent says the cost is in the contract. Leaving aside the class action, the cost is only $125. Is that correct? That would be the cost if the arbitration were to go forward under the American arbitral party. By a single party under the American Arbitration Association's consumer rules, which do not allow parties to have a live hearing. If the plaintiffs wanted to have an in-person hearing to present their evidence on whether this is an open-ended or a closed-ended credit account, according to the Zotto Declaration that's in the record, any party that wants a live hearing has to go under the commercial rules, which impose far greater costs, higher filing fees, higher arbitrator costs without regard to the value. And what are we to make of the fact that the opposing parties have said, if you choose the hearing route or any more expensive route, in fact, if you choose any route, we'll pay. And so in your case, what's unconscionable if someone else is willing to pay? Their offer to pay, first of all, changes the contract. It rewrites the contract. The contract adopts these arbitration rules. One could say also that it severs any unconscionable cost provisions. Why isn't that another way to look at it? Well, what's relevant there is the law on severability. The California Supreme Court has examined this issue in the Armendariz case, where the defendant offered to reform an arbitration clause that was found to be unconscionable. And what the California Supreme Court said was, we know of no law that allows a party to do this, that when faced with an illegal contract that it's trying to enforce, to back off of the illegal implications to try to save the contract once it's been caught, that at least that's the California Supreme Court. We must assume that as a matter of California law, there is no basis allowing the defendants to do this. Is there anything in Ohio law that allows it? That I'm not familiar with, although we think that it's law that makes good policy also, that if the defendants are allowed to do this, if they're allowed to draft an adhesive arbitration clause that's being used for low-income consumers and to impose it on a non-negotiable basis so that any dispute that arises has to go into expensive arbitration proceedings, but then when somebody actually calls them on it at the last minute, they can say, oh, we didn't really mean it. They say, we won't impose it on you. We may on the next person we've sold it to, but we won't impose it on you. That's exactly right. And that's an important difference between the defendants' offer to pay and a court's finding that it's unconscionable. If the court finds that it's unconscionable, then the contract has to be made fair for everyone thereafter. They can no longer enforce this. If the court doesn't find that it's unconscionable, if they're allowed to fix it here, the illegal cost requirements could still be imposed on these plaintiffs in another case, and it can be imposed on all of the other low-income consumers in other cases that may arise. And so it's an undesirable solution as well as one that's not authorized. Let me ask you another question. Your opposing counsel mentioned that the discovery case is now in the California Supreme Court. What's the status as far as you know? I'm co-counsel in the case, and so I should have better, more specific information than I do, but my understanding is that briefing is complete, and I don't know of an oral argument date being set yet. Won't the outcome of that case affect this case? Our position is no, is that it shouldn't, because controlling California law already says that the class action ban is unconscionable. But not a Supreme Court decision. Well, in the California Supreme Court's decision in the Southland case, it addressed the issue of arbitration and class actions, and it recognized that if an arbitration clause were to take away the right to bring a class action, that would be oppressive. And couldn't the Supreme Court change that? It could change it. We see no reason to expect that it would. Is that an issue in the case? You say the briefs have been filed? Mm-hmm. Well, then you probably know whether that's an issue that's been raised. Well, the defendants, and I hadn't focused on what the defendants in the discovery case were arguing, but what the court below held in the discovery case and what I believe the defendants are making as a primary argument, is that whatever California law is on the unconscionability of class action bans, they're saying, like the defendants here have said, that the FAA preempts that. And we think that that position is clearly wrong. And even if whether or not the California law, we think that position is clearly wrong, and the authority that the defendants have cited for the proposition that the FAA preempts California law on this point, it doesn't compel that conclusion. But if the Supreme Court agreed with the other side, it would affect this case. If the Supreme Court agreed with the other side on the ‑‑ it depends on how. If it were the question of state law, is a class action ban unconscionable? If the California Supreme Court said, no, it's not, that would affect this case. But if it said it was preempted? If it said that, yes, California law makes this unconscionable, but that law is preempted by the FAA as a matter of Federal law, that's a question of Federal law where the California Supreme Court's determination would not be binding on this Court. And this Court would need to reach that question independently. And our position is that under the notions of FAA preemption advanced by the U.S. Supreme Court today, and most recently in the Greentree v. Basil decision, the California law on this point is not preempted. The question is whether or not in an adhesive contract, a defendant can take away from consumers the right to participate in a class action. Now, the California Supreme Court for more than 30 years has said that the right to bring a class action is a really important right. In cases like Vasquez v. Superior Court, more recently in the Linder decision, it's recognized that a class action may be essential and necessary for consumers to go forward on claims because they would be impractical to bring on an individual basis. So that when you're talking about a class action ban, you're essentially talking about an exculpatory contract. That's the Zitella case by the California Court of Appeal, which said a class action ban is essentially a get-out-of-jail-free card for defendants in consumer cases. That's the backdrop here. And the question of whether that kind of ban is unconscionable has nothing to do with whether or not you can have an agreement to arbitrate. One of the key California cases on this point is the appellate decision in America Online v. Superior Court. America Online was not an arbitration case. It was a choice-of-law case. AOL had adopted a Virginia forum selection requirement. It was requiring consumers to go all the way to Virginia to litigate consumer claims. And it had a choice-of-law clause adopting Virginia law, which doesn't provide for class actions. The Court of Appeal in America Online said this is unconscionable, that this takes away an important right of California consumers that may well render their claims unenforceable. And so in a case that had nothing to do with arbitration, it set out California law prohibiting class action bans. Now, the FAA comes into the picture. The U.S. Supreme Court has recognized that the FAA preempts state laws that single out arbitration clauses for unfavorable treatment. That's the Doctors Associates v. Casarata case. That's Perry v. Thomas, Southland Court v. Keating. And this is not a law that does that. This is a law that applies to other contract terms, like a choice-of-law clause, just like it does to the arbitration clause. What the other side is trying to argue is that the FAA requires that arbitration clauses be treated differently, that if California law says in no other part of a contract can you ban class actions, the FAA gives it special treatments that you can do it here. And that goes against the whole basis for interpreting the FAA that the Supreme Court is against, which is that the FAA places arbitration clauses on the same footing as other contracts. And the same footing as other contracts in California means you can't ban class actions. Your time is up. Do you have any subjects you have not had a chance to cover? Well, I wasn't able to cover procedural unconscionability. I would like to say that in addition to the fact that it's a contract of adhesion, and nobody has seriously disputed that, there is the fact that the contract was filled out by the sales agent, that the plaintiffs weren't even looking at the arbitration requirement. They didn't have it in front of them. Whatever that says about whether a contract was formed, clearly it makes it more nonnegotiable that they didn't have an opportunity to negotiate it. And that makes it a stronger than usual case for it being adhesive. Also the fact of the language saying arbitration before implementation of proceedings. Even if it doesn't impose the nonbinding arbitration requirement we say it does, it also makes it more of a surprise that they're losing their right to a jury trial because it looks like you have arbitration and court, not arbitration instead of court. And so that plays to procedural unconscionability. Finally, and if the court will indulge, the defendants have tried to make a lot out of the U.S. Supreme Court's decision in Greentree v. Basel. From our supplemental authority letter, we haven't briefed this case at length. But what Greentree v. Basel holds is that when an arbitration clause is silent on the question of class actions, it doesn't address it specifically. The court should send it to the arbitrator to determine whether the class proceedings can go forward or not. Now, if that's the case, if the arbitrator in the Basel case can allow a class action in a contract that didn't address the subject specifically, then all of the cases they're citing saying that silence means no class actions are wrong, that Champ v. Siegel Trading Company, the Seventh Circuit case that they've relied on, is wrong, because the Supreme Court, by sending this case back to the arbitrator, has said this contract that doesn't say anything explicitly about class actions may well allow it. But how can that live side by side with a holding that that very contract, that very agreement to arbitrate is unconscionable? Because if it were unconscionable, the court would not have sent it to the arbitrator. That's, I guess, the question that I would pose to you. And then why wouldn't the answer here be to send it to the arbitrator who would then determine, as a matter of contract interpretation, whether or not class actions are or are not permissible? The question of unconscionability was not presented in the Supreme Court. What happened there was the case had gone to arbitration. I understand that. I understand that. But it just seems inconsistent for the Court to be enforcing an unconscionable agreement. Well, nobody was arguing that it was unconscionable. Both parties in Basel, both parties wanted the arbitration clause enforced. The plaintiffs wanted a class arbitration. The defendants wanted an individual arbitration. There was simply no basis for getting to unconscionability issues because both parties were pushing different interpretations of the arbitration clause. One thing from the Basel opinion that supports our unconscionability argument, or at least the argument that our unconscionability argument is not preempted, is the fact that the Supreme Court's, Judge Breyer's opinion for the Court, joined by Justice Stevens for a majority, said not only is this a question for the arbitrator, but this is a question of contract interpretation that gets decided by State law. And if it's a State law question whether or not you can have a class action, I realize that doesn't answer conclusively for us that it's a State law determination whether the class action ban is unconscionable. But I think it helps that the Supreme Court has now recognized in the Casarada case that State law of unconscionability applies, and in the Basel case that State contract law applies to the question of whether or not you can have a class action. I think the two of those decisions together provide strong support for the argument we're making that the unconscionability of a class action ban is a matter of California law, not a matter of Federal law under the FAA. If there are no more questions. There are four issues that I would like to address briefly. The first is the question of whether there is an ambiguity in the contract because of the reference to judicial proceedings. The appellee's argument disregards the law in the arbitration clause that says, this case shall be resolved by arbitration. It says elsewhere, disputes between us shall be determined by arbitration. This makes it very clear that the parties agreed to resolve and determine their claims by arbitration so that it is not susceptible of reasonable interpretation to say that the language was non-binary. Well, it says will, I suppose, but you're treating that as the equivalent of shall. Given that it was translated from Spanish, I guess I gave myself a little leeway, Your Honor, but it does say will. Going on to the question about what the purpose was for this before the implementation of any legal proceeding language. The little word that's being disregarded by the appellees is the word or. What the contract says is that the arbitration will take place before the implementation of legal proceeding or no more than 60 days after a claim and goes on in that way. As Judge Reinhart suggests, it's a timing issue. It says this is when the arbitration takes place. And of course, arbitrations always should take place before the contractual enforcement language that follows them. So there isn't any evidence of any lack of clarity or misunderstanding of the Spanish translation in response to Judge Graber's question. There is no evidence that anybody was confused, especially in light of the shall excuse me, will be resolved and will be determined language that's elsewhere in the contract. While there is a provision for ambiguity of contracts. Let me just suggest to you, you started this rebuttal two minutes over already. So instead you want to cover four points. If you do, you better do each one in a rather summary fashion. Thank you, Your Honor. Let me move on to the issue of costs. Armendariz says that it's very easy to sever the cost issue, that it is not controversial. Severance did not occur in Armendariz because of a half a dozen other unconscionable provisions in that contract. But as one of the judges suggested, it is very easy to sever that clause and substantial case law allows that. And certainly I also want to respond to Judge Graber's question. The AAA rules certainly assume that arbitration would be binding. I also believe and would be happy to submit a supplemental statement on this if necessary that the AAA rules have been refined in a way on the cost issue that they now say that if a hearing is requested in a consumer case, that the fees don't change for the consumer. And I think that's a fact issue that relates to what was said. Furthermore, Little says that issue is easily severed. Going on to the issue of the Discover Bank case. Let me ask you one general question. Is the rule in California on severability that it's within the discretion of the court, or is it mandatory to sever? It's within the discretion of the court, I believe, Your Honor, supported by substantial evidence. The next issue is the, and it's discretionary, of course, within all of the rules that are set forth within the statute in California. The next issue is the Discover Bank case. Certainly it has the potential to change the outcome of this appeal, particularly if it reverses the finding in Sotella or the finding in any of the other cases that have been cited. Unless we agree with you that Ohio law controls, right? Certainly. What it does is it would reduce the issues regarding Ting and Mantor and the other cases that are reliant on California law. And, yes, if Ohio law controls, then it would not necessarily change the outcome. On the issue of preemption, the preemption issue here comes not only from the FAA, but also from the Truth in Lending Act, which has not been addressed by the appellees. Truth in Lending Act jurisprudence says it's quite possible to enforce waivers of class action rights by consumers against companies, and, indeed, there are good policy reasons for that. Finally, on the issue of the Basel case, the Basel case does not make a finding that the contract is silent. It sends it back to the arbitrator to determine whether the contract was silent or not, and says that questions of interpretation of ambiguity of a class action provision are for the arbitrator, but does not say that any contract that truly is silent therefore allows arbitration. And, certainly, our view is it would not have been sent back to the state court had the Supreme Court felt that such a contract would be unconscionable. Thank you, Counsel. Thank you. Thank you both very much for the argument. The case just argued will be submitted.
judges: Reinhardt, Graber, Shadur